BELLOWS CO. v. COVELL.

Ohio Appeals, 6th Dist., Ottawa Co.

No. 106. Decided Oct. 24, 1927.

**First Publication of This Opinion**

Syllabus by Editorial Staff.
1257. WASTE—708 Leases—997 Real Estate.

Strict doctrine of common law, in regard to waste, has never obtained in Ohio. Act which, in fact, results in improving, instead of doing injury to, inheritance, will not be enjoined.

Appeal from Common Pleas.

True, Crawford & True, Port Clinton, for Bellows Co.
Graves & Duff, Port Clinton, for Covell.

STATEMENT OF FACTS.

On Aug. 12, 1922, the defendants, Charles and Eva Covell, leased, to plaintiff, about 45 acres of land, in Catawba Island Township in Ottawa County, for a term of 25 years, with the privilege of a 10 year extension thereof, and, since said date, plaintiff has been in possession of the premises so leased, which are now the property of the defendants, Earl and Glenna Covell. The land adjoining these leased premises, and lying west thereof, extending to Lake Erie, is owned by plaintiff. Located

thereon, along the edge of the lake, is a gravel bar. On the westerly end of the leased premises is a pond covering about 14 acres, eleven and a half acres of which is on the leased premises and two and a half acres thereof on the adjoining land owned by plaintiff. This pond deepens from the shoreline thereof to about eighteen inches in depth at the center. The sandbar separates this pond from the land.

The lease in question recites that "said premises are to be generally developed as a golf course," and contains no restrictive covenants or conditions as to the use thereof, other than the clause therein that

"Upon the termination of this lease the said J. H. Bellows Co., their successors or assigns, shall deliver up the premises herein described in as good condition as they are now in, reasonable wear and tear for the uses herein specified, excepted."

The plaintiff lessee is proposing to reduce this pond from its present size to what may be called an artificial lake covering perhaps five acres, with a uniform depth of six or seven feet, and to cut a channel through the sandbar sufficiently wide and deep to permit pleasure boats to pass from Lake Erie into the lake thus made. It is planned to build a clubhouse on adjoining property of plaintiff, and the present golf course laid out on the leased premises is to be extended and enlarged, one of the contentions made being that the pond, in its present condition, considerably lessens the adaptability of the leased premises for their intended purpose. The plaintiff, in its petition, alleges that the defendants are threatening to enter upon the leased premises to obstruct, interfere with and prevent the proposed improvement now in process of construction, and prays for an injunction to restrain their so doing, and also asks for a decree quieting its title in and to the leased premises. The defendants claim that the lease did not contemplate and does not authorize the prospective and attempted changes in topography of the leased premises and that the improvements, so-called, by plaintiff, if consummated, constitute waste and should be enjoined.

LLOYD, J.

"Obviously the question to be determined is whether, under the circumstances here involved having in mind the character of the premises leased and the purposes for which leased, the proposed changes therein constitute such waste as will be enjoined.

The law formerly regarded as waste anything that in any way changed the identity of the leased premises and was most exacting in repressing such acts. It seems not to have mattered whether what was done was injurious or beneficial to the reversion, it being considered of the utmost importance that the condition of the premises should remain unchanged so that there might arise no confusion as to its identity. Such was the rule of the common law as transmitted to us from England, but it seems now to be settled that many things may be done by a tenant in this country that, if done in England, would be waste.

The Supreme Court, in Crockett v. Crockett, 2 OS. 101, many years ago, decided that the strict doctrine of the common law, in regard to waste, has never obtained in Ohio, and generally the rule now is that an act, though perhaps technically waste, which in fact results in improving instead of doing injury to the inheritance, will not be enjoined. Waste of this character has been designated as meliorating or ameliorating waste.

In the instant case the lease provided that the leased premises, in conjunction with other property. was to be generally developed as a golf course and this recital, as we view it, plainly indicates that such changes as became necessary to accomplish this purpose were within the contemplation of both lessor and lessees, and, by implication at least, whatever was reasonably required to so develop the property, for this designated use was, by the terms of the lease, permissible.

Even if we were to conclude that the lease does not impliedly nor expressly authorize plaintiff to proceed as proposed, we are unable to see that, by so doing, any injury will result to the defendants. The land area will be increased for either agricultural or for allotment purposes, the latter possibility being the most probable, if we may vision the changes that 25 or 30 years will bring to this locality.

It is the decree of this court, therefore, that the cross-petition of the defendants be dismissed and that plaintiff be permitted to proceed with its plan to decrease and deepen the pond in question, but that the portion thereof located on the leased premises shall not cover more than 4 acres thereof, nor be more than seven feet in depth and that the material taken therefrom shall be deposited upon the leased premises. We do not purpose hereby to abrogate or change any of the terms or conditions of the lease, and accordingly limit the decree herein to the conclusions above expressed."

(Richards and Williams, JJ., concur.)